Good morning, Justices. Janna Dutton appearing on behalf of the Appellant, Betty Zander. May it please the Court. The issue before the Court today is the construction of an Illinois Medicaid regulation, and specifically that is Section 120.387 of Title 89 of the Illinois Administrative Code, which I'll be referring to as the applicable regulation. And specifically, whether under that regulation, Mrs. Zander is the Plaintiff Appellant, whether her assignment of a beneficial interest she owned in a land trust is a transfer of her personal property or was a payment from a revocable trust. If it, in fact, is a transfer of personal property, it's subject to a 36-month lookback. And if it's a payment from a revocable trust, it's subject to a 16-month lookback under the applicable regulation. So Mrs. Zander, in December of 2003, assigned her interest, her beneficial interest in a land trust that held farm property to her daughters. She then, 37 months later, in January of 2007, applied for Medicaid. Her application was denied. And it was denied because the Department determined that her assignment of her beneficial interest was actually a payment from a revocable trust. And they applied a 16-month lookback to that transaction. And as a result of the application of the 16-month rule, they applied a penalty period of ineligibility to her of 7 years and 3 months. She appealed the final administrative decision, upheld the original denial. The circuit court affirmed the final administrative decision. So the applicable regulation provides generally that transfers made more than 36 months before the date of application for Medicaid coverage for long-term care are allowable. In fact, the regulation specifically says these transfers are allowable and then goes on to describe them. Any transfer but for two exceptions are considered to be allowable transfers. And those two exceptions are payments from a revocable trust and payments to certain irrevocable trusts. The Department noted... Let me suggest one of the problems I have with treating this as simply a transfer as opposed to a payment. A payment suggests that it's a one in the process, it's a process. It could be the first of several possible payments from the corpus of the trust as opposed to a transfer. Once something is transferred out of the trust, then it's no longer part of the trust. And to that extent, the control is in the person receiving that transfer interest from the trust. But a payment suggests that the source of that payment remains within the trust, and therefore it is a different sort of thing. Did I lose you there? You lost me a little bit, although it is possible to pay out the entire corpus of the trust and it would be one payment, and occasionally that does come up. But it would still necessarily be a payment as opposed to a transfer. If it came from the corpus of the trust, it would be a payment. My position is that under Illinois law, the beneficial interest in a land trust is the personal property of the beneficial owner and is not part of the corpus of the trust. So that is one of our primary arguments here, and I think Illinois law supports our position. There's numerous cases. Well, let's address at least that part of it. When you say it's Illinois law, are you suggesting that this Medicaid program, a federal program, should vary from state to state depending on the law of each state? Well, each state has significant parameters in terms of how they implement the Medicaid law. And there are significant divergences between the federal law and a particular state program. So I'm not sure what your exact question is there. Well, the question is the fact that Illinois may treat the property within a trust as personal or the beneficial interest within a trust as personal property, should that decide what is a combined federal-state question that affects many other residents other than those simply in Illinois? And let me put it in the context of what you acknowledge in your brief, and that is that it's a legal fiction that property within the trust, that real property within the trust is really transformed into personal property. It's a legal fiction. However, it's pretty clear Illinois law, and the cases have described Illinois land trusts as not conventional trusts and have distinguished the Illinois land trust from a conventional trust. And it is peculiar to Illinois. Land trusts are not nationwide entities, not all trusts. In fact, most states, in fact, don't acknowledge them. But ours is statutorily created as well as created by a long line of case law interpreting what a land trust is. And it's not a conventional trust. And because it's not a conventional trust, my argument is that this particular phrase, payment from a revocable trust, could not apply to this particular assignment of a beneficial interest. It's not a conventional trust, which means that in conventional trusts, the beneficiary actually has a beneficial ownership. But in an Illinois land trust, the law is clear that the trustee holds both the legal and equitable title. The beneficiary has no interest in the title. And the only thing comprising the corpus of a land trust is that naked title. It's both legal and equitable. In fact, the courts have referred to Illinois land trusts as naked trusts because that's all they own. The rest of the ownership, the beneficial interest, has clearly been described as the personal property right of the owner of that beneficial interest. Why describe it as personal property? It's personal property only because it's a convenient term to use. It isn't personal property in the sense that it describes the actual property within the trust. The actual property within the trust in this case is farmland, as you point out, which is obviously real property. The actual corpus of the trust is the legal and equitable title to the farmland. And state law is important in interpreting this regulation because state law, both in the statute as well as in the case law, consistently describes the beneficial interest in a land trust as personal property. And that's described in the context of each of those cases. It's not necessarily the context of Medicaid law, where the focus is on the resources of the individual seeking to fall under the Medicaid program, either medically in need or because they're in need. No, I agree that there's no precedent for you to follow in this case. So I'm just wondering whether we should be tied to that characterization as personal property in addressing a matter that hasn't been addressed before. Well, the reason I believe that you should be tied to that construction of what that personal property right is, is because this particular regulation is punitive. It's a penal statute. And courts have consistently held that where courts are construing penal statutes, they have to confine their construction to the actual limits of the plain language of the regulation. Here the plain language is payment from a revocable trust. But that's not what Mrs. Zander thought she was doing. She thought she was transferring a personal property right. She had no way of looking at that language and knowing that that was going to apply to what she did, which under Illinois law clearly was a transfer of her personal property right. She had an unfettered and absolute right to transfer it. The trustee's not involved. What she did does not affect the corpus of the trust. And that was the law of what she was aware. This is certainly a punitive statute. I mean, I argued strongly that position in our brief, and the appellee did not respond to it, didn't refute it, didn't even address it. Well, characterizing it as a penal statute certainly adds color to the argument, but it doesn't necessarily add any substance. It could be in the eye of the beholder. It's penal in the sense that it sort of restricts. It does impact your client, but in the sense when you consider the overall impact on the Medicaid program, it is beneficial to other individuals who don't have resources, or it certainly allows the resources in the Medicaid program to expand, to extend beyond those who are, to include those who simply don't have the resources. And to that extent that those who have resources are treated differently, it's for the benefit of those who don't have resources. Well, in response to that argument, I'd like to discuss one of the policy reasons why the court should strictly construe a punitive statute. And as we argued in our brief, and as I believe, is that it is a punitive statute because it does have a particular formula for calculating a specific penalty, and the penalty is a number of months of ineligibility for Medicaid. I don't think there's any doubt that it is punitive. But one of the public policy reasons for the court, and as noted by this court in the Saskel decision, is that it's unfair to penalize somebody if they are not clearly apprised of what behavior is going to result in a penalty. And because Illinois law is very well settled that this is a personal property right of Mrs. Zanders, and she has an unfettered right, it's not clear from the language of that regulation that she was going to be penalized. Now, had she known, she could have taken a couple of different steps, which may have had the same consequence to the taxpayer, and that would be, had she known the department acknowledges that if she had used a quitclaim deed instead of an assignment. That's the interesting part about the use of a quitclaim deed, because use of a quitclaim deed relinquishes all control of the transferor in that property. So Mrs. Zander wouldn't have any control over what happens to that property if she transfers that property with a quitclaim deed. That's also true of an assignment of an unofficial interest. Well, that's what distinguishes a gift from a payment. A payment, Mrs. Zander retained control over what's going on in that land trust. Mrs. Zander, she retained no control over what was happening. Well, she retained control to the extent that she created the land trust and then applied certain and restricted the land trust in the language that was used to create the land trust. And to that extent, she impacted the future of that property within the land trust. And she did retain control in that sense. At the time she created the land trust, she did. But once she assigned her beneficial interest, she gave up all rights and all control and any incidence of ownership. Except that the person that received the beneficial interest of that land trust was not standing in the shoes of Mrs. Zander prior to the creation of that land trust. They cannot just do anything they want with the property of that land trust. That land trust remains... They can exercise all rights of a beneficial owner of a land trust, which means they can sell it, they can occupy it, they can collect rents. It's pretty much... All three of them. Yes, all three of them. So my position is there's really no difference between her quitclaiming her ownership interest and her assigning her beneficial interest. It's the same result. The only difference is one is personal property and one is real property. So had she been aware that this regulation was going to be interpreted to include her transfer of her personal property rights, she wouldn't have done that. And I think that's why it's not fair to apply this to a beneficial ownership land trust. Let me ask you this. Why would she do it to begin with? I mean, there are many uses of land trusts having to do with title. What would be one of the real critical issues in creating a land trust? It's an estate planning device. Her daughters potentially would have creditor judgment issues. It would preserve title to the property. There are many... I mean, we're not entirely protected, but give it some protection from that. Give it some protection as non-marital property. Should any of her daughters have marital issues? You know, it provided some protection, and her reasons for using it had nothing to do with this being some sort of a benefit for Medicaid planning. It certainly wasn't. It's certainly not. I probably agree with you there, but it certainly did... She certainly exercised certain control over that property by creating a land trust. She did. But when she assigned her beneficial interest, she gave it up. It was a completed gift. She held no further interest in the land trust. She transferred her personal property. It's comparable to a quick guarantee. The curious thing about it is that the land trust itself was created the early part of December 2003, and the transfer occurred a couple weeks later, which suggests that everything was all part and parcel of the same purpose behind creating one. In my mind, that's no different than just signing a quick claim deed, except she had certain estate planning reasons and other reasons to use the land trust instead of a quick claim deed. And she had no idea that this payment from a trust would be applied to her, and it's really not fair because the language doesn't clearly include assignments which historically and consistently in Illinois are personal property rights. Let me take you back to the public policy argument. We've been jumping around this a little bit. Had she been aware, had she had notice in the first instance, is your starting off point. But would you detail for me the public policy argument that you think militates in favor of our finding for your client? Well, under both federal and state law, transfers of personal property from one individual to another are allowable if they are made more than 36 months before applying for Medicaid. So they're clearly described as allowable. That is the public policy. That's simple? Yes, I think it is. It is allowable. And that's what the citizens of the state of Illinois have relied on. So would you say that citizens in Illinois stand in a better position than the individuals in states where land trusts aren't recognized? South Dakota, Kansas? No, I don't think so because they wouldn't even use a land trust in South Dakota and Kansas. Because they'd use a quick claim deed and they'd accomplish the same result as Mrs. Zander did here in Illinois. I think there are going to be tax consequences, aren't there? There are comparable tax consequences to both transactions. I mean, they're really identical in terms of the actuality of it. You can wrap up and then you'll have a couple of minutes. I just wanted to note that the appellee misdescribes, I would just say in a couple of places, misstates Illinois land trust law. And at one place they do so is on page 17 of their brief, where they characterize Mrs. Zander's assignment of her beneficial interest as a dispersal from the corpus of the land trust. And again, the law is absolutely clear. The corpus of the land trust is the legal and equitable title, and there was no disbursement from the corpus. Would it be fair to say it's income from the corpus of the land trust? A land trustee has no right to collect income. That's part of the beneficial ownership. So there was no payment from either the corpus or the interest because it's a naked trust under Illinois law. All it is is legal and equitable title. There are no other rights, no right to collect the proceeds from the sale, no right to collect income, no right to occupy and possess the property. Those are all the attributes of the actual personal property right of the beneficial interest. So I believe that does misstate Illinois law. They also made another misstatement on page 17, saying basically that Mrs. Zander's assignment of her beneficial interest in the land trust gave her daughters an ownership interest in the land. And I refer you to an Illinois Supreme Court case of Elpert, citing in our reply brief that it's well settled that the assignment of a beneficial interest in a land trust requires no interest entitled to the raise of the property, of the land trust, which is the title. But they could sell it, as you pointed out. They can sell it because that's their personal property right that they received from their mother. And then finally, I just wanted to point out that the APALEE cites several different cases, Vincent, Guyen, Lebeau, Allen, Hobbs, standing for their proposition that public policy is somehow contrary to what Mrs. Zander did. And none of those cases are on point because they all involve a determination of whether the corpus of a self-settled trust is available to the settlor for the settlor's Medicaid eligibility purposes, period. There were actual assets and funds in those trusts that were created by the settlors. And the issue was, is that money available to them? This is their self-settled trust. This is not the issue before the court, which is really the construction of this regulation and the application of the look-back period. I do have a quick question regarding the standard of review. Both parties appear to agree that it's de novo, except I think there is case law that suggests that when it's construction of a regulation of an agency, and the agency itself has construed that regulation, that the course of review over some deference may be not a separate standard of review, although it may be less than de novo but more than clearly. Do you have any connection? Is there a presumption of regularity, for example, in terms of the agency's construction of its own regulation in the first instance? A presumption of regularity? It's going to be consistent in its application, right? I'm not sure what your question is, so I guess I don't have an answer for you. My question is, do we owe any deference to the regulation construed by the department, or is it entirely de novo? I believe it's entirely de novo because regulations, I mean, the case law holds that regulations are construed in the same manner as statutes, especially when it's a penal regulation that the court construes it very strictly and just looks at the plain language of the regulation and applies it strictly. All right, thank you. You'll get a couple minutes. Good morning, Your Honors. May it please the Court. Well, my assistant attorney general, Carl Elitz, appearing this morning for the Department of Health Care and Family Services and the Department of Human Services. These agencies work together to administer the Medicaid law in Illinois, which Your Honors understand I know is a federal and state program designed to help the state's poorest citizens with one of the things that this case involves with paying for nursing home care when they can't otherwise do so. Helping the poorest citizens is certainly one aspect, but the other is that there is a provision to help the medically needy, regardless of their resources, so long as they've sort of depleted their own resources within a certain time frame prior to applying. And that notice concern is certainly not something that we can take lightly. I mean, why should Mrs. Zander be treated as if she were on notice, that the land trust that she created with, it seems, this very possibility in mind, why should we say tough luck? Your Honor, I think the language payment from a trust was sufficient to put Mrs. Zander and her attorney on notice when they created the land trust, that this was something that would trigger the 60-month look back, as opposed to the 36-month look back. The term is not self-defining, and so the federal agency that assists the states in interpreting the Medicaid law has promulgated regulations. Those regulations suggest that a payment from is something that would include the transfer of a beneficial interest in an Illinois land trust. And the reason is? Because something of value has moved from Mrs. Zander's ownership to somewhere where she doesn't really have the same ownership rights anymore, and the property is no longer available to assist her in her medical care. That's really the task. I mean, that's what Congress intended when they passed certainly the amendments to the Medicaid Act in the early 1990s. How does Illinois law regarding the characterization of the beneficial interest as personal property interplay with that very intent of Congress? Your Honor, one of the problems I have is as a generalist, you know, I'm always out of my depth a little bit when we start talking about very specific details about trust law, Illinois law, for example. I may have misstated when I said that an ownership interest was transferred. I don't think it's relevant, though. I think Ms. Dutton and I are actually talking past each other. It can be, in my opinion, from what I understand, a transfer of a personal property interest and a payment for purposes of the Medicaid Act. Those things don't seem to be inconsistent to me. If Ms. Zander, in this case ---- So your test is the passing of value rather than focusing on, in the first instance, the definition of whether it's a transfer or a payment. Obviously, we have to stick to the statute. Sure. And this is a transfer of value. I think that's what the policy of Congress is when it enacts these regulations, that if value goes from the applicant to someone else that is unavailable to pay for her medical care, then there's a look back. But the value from personal property certainly doesn't fall. If she gives entirely all of her rights to something, personal or real estate, as I understand it, that would be a 36-month look back. But she received the benefit of the Illinois Land Trust here. Whatever those benefits are, and my understanding is rudimentary, but one of the things she got from this is that this asset then became titled to the trust and not to her personally. And it was managed more easily by the fact that she put it in a land trust. Whatever the benefits of that land trust were, she got them when she put them there, a few weeks after she was admitted to the nursing home, which seems like an odd time to do this, but she did. One of the benefits from a land trust, Your Honors, asked about that would be that it's hard to track where it is. I can't ascribe any motives to Ms. Zander. She disclosed it when we asked her what assets she had. She disclosed this asset to us. That's how we ended up being here. The question is, is whether it fits within a reason, whether the agency reasonably can construe that language, payment from a trust, to include what Ms. Zander did here. The agency concluded that this was a revocable trust, and under revocable trust rules, that's the test, whether it's a payment from. Let me interject. I do apologize, but your choice of language was interesting to me. Was the agency reasonable to conclude that? That strikes me as going to the question that Justice Garcia asked, and are we talking about strictly de novo review, or is there some deference that we need to give to the agency in construing in the first instance this regulation? Illinois law is notoriously confused, I think, in this area. Well, I think we might be able to agree on that also. There are cases all over the place. Of course, that's crucial for our consideration. There are cases that talk about de novo review with deference, which makes my head hurt. Our Supreme Court seems to take cases where they believe the language is bell clear. They know what the language of a statute is or a regulation, and they put aside the agency and say, we don't need you to tell us what this means. We're justices, and we understand how to read a statute, how to read a regulation. Then there are other cases where they say, this language is subject to some construction, and in construing a regulatory regulation or even statutes where the General Assembly or Congress has given the statutory authority to interpret the regulation to the agency, then the courts presume regularity and try to find a way of ruling consistently with the state agency. You don't have to guess which side I'm on in that debate how this court should consider those different arguments. I don't think it matters. You appear to take the position that it's de novo review. I think I have to concede it's de novo review given what the Supreme Court recently did in one of the cases I cited earlier in my brief. It seems like we're postured in the same way. I think it's Guyon, Your Honor. Guyon was the appellate court decision. It must be Gilmore. When I read Gilmore, I thought, this is really the same posture as the Gilmore case, and I think I had to concede that it was de novo review. But it's only de novo review in that strange Illinois way where there seems to be some presumption of regularity, as Your Honor said. Other cases talk about some deference. Other cases say there's no deference, but then go on and read the regulations and try to get at the nub of what's going on. That's what I would suggest is appropriate here, even though I'm not willing to concede that payment from is something that the court, without looking at any regulations, would come to the conclusion that that's really what happened here. Even though there's only a transfer of paperwork and the trustee of the land trust is told, don't hold this any longer for Ms. Zander, hold it for her three daughters, that's a gift by Ms. Dutton's first page in her brief. She calls that a gift. That's a transfer of something of value, which Ms. Zander no longer can draw on for her payment. The public policy hearing, when you talk about Medicaid, there are two public policies that always are discussed by the U.S. Supreme Court and the Illinois Supreme Court. One is to protect the people who are beneficiaries under the program, and the other is to prevent people who have means to use the ability to give things away so that they can qualify. The state is fairly generous in protecting these people who are ill and need care, but the payback for that is the state expects them to pay first for what they can. And to be poor under the Medicaid is to be really poor. I think $2,000 is the maximum amount of assets someone can have. That's just beyond poor. That's just dirt poor. And that's what the state requires of applicants for the Medicaid law. So what's your position regarding whether characterizing this as a penal statute works into the analysis? I agree completely with Your Honor. I thought it was atmospherics and really wasn't helpful to decide whether this was payment or not. Some of the cases that I read have referred to this as penal in the sense that there's a 36-month look-back for some people and a 60-month look-back for others, so they seem to be penalized if they use the trust vehicle to transfer their property. I was reluctant to take her on about that because I think the cases would be back at me. Here it says here is a penal statute. Here they call it penal. I don't think I've ever found a case that says it's penal and then goes on to strictly construe it against the government. That's not something I've seen. What does that get us? It doesn't get us anywhere. I don't think it's a fruitful detour. I think it is a detour. I don't think it's very helpful in deciding what Congress meant when it said that payments from trusts would be subject to the 60-month look-back. I don't think there's anything wrong with saying this is a transfer of personal property and a payment from a trust that requires the 36-month look-back. As I said, she received the benefits, whatever they were, of using an Illinois land trust. It was not a quick claim deed. If it had been a quick claim deed, we'd have a much easier case. We'd have a 36-month wait instead of the 60. When she used the trust in Illinois. Is she prepared to concede that? I think – boy, Your Honor, I hate to ever concede anything. But I think – The words were yours. Yeah. I believe that that is something that the record may bear out. I think our agency may have said if this had been a straight gift, we'd be looking at a 36-month transfer. But she used the trust vehicle. And I cite a case called Hobbs that I'm criticized for in the reply brief for citing because it's not the same sort of trust that's involved in this case. Of course it's not. We have an Illinois land trust. How many cases involve Illinois land trusts? A few at most. That case has wonderful dicta. I think it's judicial dicta, not oberta dicta. It talks about why it is that Congress decided that it was going to impose a 60-month look-back instead of a 36-month look-back. And it was because Congress perceived that the trust instruments, any sort of trust instruments, were being abused by applicants who were making Medicaid applications, saying they were dirt poor, like they have to say in making those applications, or were soon to be dirt poor. And yet what they were really doing was transferring value to their family members. At the bottom, I think this is a fairly straightforward case. I should point out that when we're interpreting the federal government's agency, the CMS I believe is the new designation for it, when we're interpreting their interpretations, when we look at their interpretations of the statute, Illinois is not bound to follow those per se. What Illinois has to follow is the congressional legislation. But it's helpful to look at what CMS says because CMS has this presumption of regularity. They help the states parse this language out. And they say in regulation that they promulgated that a payment includes actual cash as well as non-cash or property disbursements such as the right to use and occupy real property. I said that an ownership interest was transferred apparently on page 17 of my brief. Maybe I mistakenly said that. But I don't think that matters much because I think what matters is that there's the right to use and occupy real property was moved here. As the beneficiary of a land trust, the daughters could pick up the phone, tell the trustee, we'd like the land sold. One of us would like to move into one place, the other the second, the third the third parcel. It is their property. It was a gift in Ms. Zander's brief's words. And I think that suggests that there was a payment from that land trust to the daughters and that should control the outcome of this case. If your owners don't have any other questions. All right. Well, thank you very much. Thank you very much, Ryan. Just very quickly. So let's address that part where he says that we can call it personal property and still treat it as a payment. What's your response? Well, to pay something from a revocable trust, it has to be something comprising the corpus of the trust. Okay. And it didn't. It didn't come from the trust because Ms. Zander never transferred it to her trust. She retained it. In fact, one of the findings in the final administrative decision is that Ms. Zander retained the beneficial interest. She never transferred it, so it wasn't in the corpus of the trust. You know, I don't dispute the fact that it was a gift. It was a gift. She did transfer something for value. My point is that under federal and state law, if you transfer personal property to an individual more than 36 months before applying for Medicaid, the state says it's allowable, and that's what she was counting on. And also I wanted to note that the CMS guideline, which is not a promulgated regulation, it's simply just a guideline, specifically says that for purposes of this section of payment is any dispersal from the corpus or from the income generated by the trust. There was no dispersal of either the corpus or income because the trust had no income and the beneficial interest was personal property. I think I'm just going to end on that note. All right. Thank you very much. Okay. Thanks. All right. The case will be taken under advisement. The court is in recess.